# THE PEOPLE OF THE STATE OF CALIFORNIA *ex rel.* P. L. SHOAFF *v.* R. B. PARKER.

VACANCY IN OFFICE.—Whether a failure to elect a successor leaves an office vacant at the expiration of the term, in the sense of the eighth section of the Fifth Article of the Constitution, which provides that "when any office shall, from any cause, become vacant, and no mode is provided by the Constitution and laws for filling such vacancy, the Governor shall have power to fill such vacancy by granting a commission, which shall expire at the end of the next session of the Legislature, or at the next election of the people," considered, but not fully decided.

VACANCY IN OFFICE OF DIRECTOR OF THE INSANE ASYLUM.—Under the statute of 1866, creating a Board of Directors of the Insane Asylum, which provides that "in case of a vacancy in said Board occurring when the Legislature is not in session, said Board may fill said vacancy until the next assembling of the Legislature, and then the Legislature shall proceed to fill said vacancy for the unexpired term only," the filling of vacancies is provided for in the sense of the eighth section of the Fifth Article of the Constitution, and the Governor has no power to fill them by appointment, whether the vacancy be for a full or an unexpired term. (SPRAGUE, J., and CROCKETT, J., dissenting.)

IDEM.—If a Director of the Insane Asylum resigns, and the Board of Directors fill the vacancy, the new incumbent will hold until the assembling of the Legislature, and thereafter until the Legislature fills the vacancy; and if the Legislature adjourn without filling the vacancy, he will still hold until a successor appears who has been appointed by the Board or elected by the Legislature. (SPRAGUE, J., and CROCKETT, J., dissenting.)

APPEAL from the District Court, Fifth Judicial District, San Joaquin County.

The plaintiff appealed.

The facts and the points of counsel are stated in the opinion of the Court.

*Terry, Carr & Wilkes,* for Appellant, cited *The People ex rel. Langdon* v. *Reid,* 6 Cal. 288.

*George Cadwalader,* for Respondent, cited *People* v. *Stratton,* 28 Cal. 388; *Stratton* v. *Oulton,* 28 Cal. 44

By the Court, SANDERSON, J.:

This is an action brought under the provisions of the Fifth Chapter of the Practice Act to determine the right of the relator and the defendant to the office of Director of the Insane Asylum. The complaint shows that, by an Act of the Legislature of the 31st of March, 1866, (Stats. 1865–6, p. 513,) E. S. Holden and six other persons were constituted a Board of Directors of the Insane Asylum. That, by the terms of that Act, Holden's term of office was fixed at two years, commencing from the date of the passage of the Act, to wit: the 31st of March, 1866. That Holden resigned on the 8th day of February, 1867, thereby causing a vacancy, which, in accordance with the provisions of the statute, was filled by the other members of the Board, by the appointment of the defendant, which appointment, as claimed by the relator, expired, by the terms of the statute, at the commencement of the next session of the Legislature, to wit: the first Monday in December, 1867, at which session it became the duty of the Legislature to fill the remainder of the vacancy for the unexpired term of Holden. That the Legislature adjourned on the 30th of March, 1868, having failed to fill the remainder of the vacancy for the unexpired term of Holden, and also to elect his successor for the full term, commencing on the 31st of March, 1868. That on the 16th of June, 1868, the relator was appointed and commissioned by the Governor to the office of Director, *vice* the defendant, whose term, as alleged, had expired. That possession of the office was subsequently demanded and refused.

The defendant demurred upon the general ground that the complaint did not state facts sufficient to constitute a

cause of action. The Court below sustained the demurrer, and final judgment passed for the defendant, from which the plaintiff has appealed.

Two questions are presented in argument: first, was there a vacancy in the office at the time the relator was appointed and commissioned by the Governor? and second, if so, was the Governor entitled to fill it by virtue of the eighth section of the Fifth Article of the Constitution, which provides that "when any office shall, from any cause, become vacant, and no mode is provided by the Constitution and laws for filling such vacancy, the Governor shall have power to fill such vacancy by granting a commission, which shall expire at the end of the next session of the Legislature, or at the next election of the people?"

There has been some conflict of opinion in this and other States as to whether a vacancy occurs, within the meaning of this provision of the Constitution, upon the failure of the proper body to select some person to succeed to the office upon the expiration of a term. In the States of Pennsylvania and Missouri it has been held that a vacancy does not occur, but the incumbent of the expired term holds over. (*Commonwealth* v. *Hanley*, 9 Penn. St. 513; *State* v. *Lush*, 18 Mo. 333.) In the case from Pennsylvania, one Brooks had been elected to the office of Clerk of the Orphans' Court, but before the commencement of his term he died. Thereupon the Governor appointed the relator, Broom, who demanded the office of the incumbent of the expired term, who refused to deliver possession. The Court held that the incumbent of the expired term held over, and that there was, therefore, no vacancy in the office which the Governor could fill, in the sense of the Constitution of that State, which provided that prothonotaries and clerks should be elected by the people, and should "hold their offices for three years if they shall so long behave themselves well, and until their successors shall be duly qualified. Vacancies in any of the said offices shall be filled by appointments to be made by the

Governor, to continue until the next general election, and until successors shall be elected and qualified as aforesaid."

In the case from Missouri, the defendant, Lush, had been elected to the office of Public Printer by the Legislature, under a statute which fixed the term of office at two years, and "until a successor is elected and qualified." The Legislature failed to elect a successor. Thereupon the Governor appointed one Tredway to the office, acting under the sixth section of the statute, which provided that " if the Public Printer should die, or resign, or if from any other cause the office should become vacant, the Governor shall appoint a Public Printer, who shall give bond and qualify, and shall hold his office for the same time that the Printer in whose stead he shall be appointed would have held." The Court held that the failure to elect a successor did not create a vacancy upon the expiration of the term for which Lush had been elected, which the Governor had the power to fill, but that Lush held over.

The opposite conclusion has been reached in this State in the case of *The People* v. *Reid,* 6 Cal. 288. Reid had been elected by the Legislature to the office of Resident Physician of the Insane Asylum under a statute then in force, which provided that a Resident Physician should be elected by the Legislature and hold office for two years, " and until his successor is appointed and qualified." (Stats. 1853, p. 204, Sec. 5.) The Legislature failed to elect a successor to Reid. Thereupon the Governor appointed the relator, Langdon, to the office, and it was held that the failure of the Legislature to elect caused a vacancy to occur at the expiration of Reid's term, and, as the Legislature had provided no other mode for filling it, (the statute being silent upon the subject of vacancies,) the Governor had the power to fill it by virtue of the constitutional provision to which we have referred. Subsequently, in the case of *The People* v. *Mizner,* 7 Cal. 524, it was again said to be settled in this State that vacancies in office are not confined to such as are produced by causes happening after the commencement of a term and before its

termination, but also include such as are produced by causes happening or taking effect after the termination, as, for example, a failure to elect a successor; or, in other words, that a vacancy may exist as to a *full* term as well as to the unoccupied portion of a term. The doctrine of these cases has been somewhat trenched upon by the subsequent cases of *People* v. *Whitman,* 10 Cal. 43; *Stratton* v. *Oulton,* 28 Cal. 44, and *The People* v. *Stratton,* 28 Cal. 382; but for the purposes of the present case, we do not find it necessary to consider to what extent the rule in the former cases has been modified by the latter. We shall assume that the rule in *Reid's Case* is still the rule in this Court for all the purposes of the present case, not intending, however, to be concluded upon the question hereafter.

The statute under which both parties claim the office reads as follows: "Messrs. E. S. Holden, Austin Sperry, A. J. Spencer, William M. Boggs, T. R. Anthony, Newton Booth, and N. D. Ropart, are hereby constituted a Board of Directors of the Insane Asylum of California, and shall hold their office until their successors, who shall be elected by the Legislature in Joint Convention, and whose term of office shall be four years, shall be elected and qualified. At said election such choice shall be made that the Board of Directors shall always consist of four citizens of the City of Stockton or vicinity, and one citizen of each of the Congressional Districts of the State of California. They shall be divided into two classes, in the order of their names; the first, second, and third named shall go out of office at the expiration of two years from the passage of this Act, and the fourth, fifth, sixth, and seventh named shall go out of office at the expiration of four years *from the passage* of this Act. In case of a vacancy in said Board occurring when the Legislature is not in session, said Board may fill said vacancy until the next assembling of the Legislature, and then the Legislature shall proceed to fill said vacancy for the unexpired term only." (Stats. 1865–6, p. 513.)

As already suggested, this case involves the right of both

the relator and the defendant. The relator's right rests upon the appointment of the Governor for the term succeeding Holden's, commencing on the 31st of March, 1868; and the defendant's upon the claim that he was the legal incumbent of the office at the expiration of Holden's term, and therefore entitled to hold until his successor should be elected or appointed by some competent body or power, and, in connection, upon the further claim, that the Governor is not vested with power to appoint his successor. We shall first examine the title of the relator.

Under the statute, as quoted above, Holden became entitled to hold the office for the term of two years from the 31st of March, 1866, and until his successor should be elected by the Legislature in Joint Convention. The Legislature having failed to elect his successor, the term following his, which commenced on the 31st of March, 1868, and to which the relator was appointed, became vacant under the rule which we have adopted for the purposes of this case. The session of the Legislature, by constitutional appointment, terminated on the day previous, to wit: on the 30th of March, 1868, on which day the Legislature adjourned. The vacancy did not occur, therefore, while the Legislature was in session. The case then falls directly within the letter of the statute, which provides that if a vacancy occurs when the Legislature is not in session, the Board of Directors shall fill it until the next assembling of the Legislature, when that body shall proceed to fill it for the unexpired term. Under this section of the statute no vacancy can possibly occur which the Governor can have the power to fill. His power is confined, by the express terms of the Constitution, to vacancies not otherwise provided for. This statute covers the whole ground. It provides that vacancies which occur when the Legislature is not in session shall be filled by the Board of Directors. Vacancies which occur during the session of the Legislature can be filled by that body. No distinction is made between vacancies founded upon the causes by which they may be made to occur. The language is broad and covers every

vacancy, irrespective of its cause. If a vacancy can be said to exist, as we assume in respect to a *full* term to which no one has been elected, then such vacancy is within the language of the statute, for the statute makes no exception.

That such was the intention of the Legislature is not only apparent from the language of the first section, but from the language of the fifth section of the statute in relation to vacancies occurring in the Board of Medical Visitors. It is as follows: "In case of a vacancy occurring in said Board of Medical Visitors, the same shall be filled by appointment by the Governor until the next meeting of the Legislature, at which time the vacancy shall be filled for the unexpired term by the Senate and Assembly in Joint Convention." Thus the statute creates two Boards—first, a Board of Directors; and second, a Board of Medical Visitors. It provides for filling vacancies in each. In the one case it gives the power to the Board of Directors, if the Legislature is not in session; in the other to the Governor. This distinction proves itself. The mere fact that the power is thus divided proves that it was not intended to be united. Taking the two provisions together, it is obvious that the whole subject of vacancies was intended to be provided for. If occurring during a session of the Legislature they are to be filled by that body in respect to both Boards; if while that body is not in session, those occurring in the Board of Directors are to be filled by that Board, and those in the Board of Medical Visitors by the Governor; and we have no doubt that such was the intention of the Legislature.

The idea which has been suggested in argument that the vacancies which the Board of Directors are authorized to fill are only such as occur as to a *part* of a term, and do not include vacancies which occur as to a *full* term, and, hence, that the Governor has power to fill the latter, has not only no foundation in the language of the statute, but has none in the reason of the case, and we cannot adopt a distinction which neither the language of the statute nor the occasion suggests. Did the language of the statute leave the question

open to doubt, we should find a further guide in its manifest spirit. If the Legislature intended that the Governor should fill vacancies which might occur in respect to *full* terms, we can perceive no sensible reason why they did not also leave him to fill those which might occur in respect to *partial* or *unexpired* terms. Our conclusion, therefore, upon this branch of the case is, that if the office for the term commencing on the 31st of March, 1868, became vacant by reason of the failure of the Legislature to elect, the power to fill the vacancy was not left in the Governor under the Constitution, but was expressly granted by the statute to the Directors.

It only remains to determine whether the defendant is or was a usurper at the time this action was commenced. It is very clear, in view of what has been already determined, that he was not. He came rightfully into the office by the appointment of the Board of Directors, upon the resignation of Holden. Nor did his incumbency cease to be rightful after the assembling of the Legislature on the first Monday in December, 1867. He was rightfully in the possession of the office thereafter as *locum tenens*, both by the terms of the statute, which provides that the Directors shall hold until their successors shall have been elected and qualified, and by the rule of the common law, which was adopted from necessity, to prevent a suspension of the business of the office to the possible detriment of the public service. (*Stratton* v. *Oulton; People* v. *Stratton, supra.*) He, therefore, by reason of the failure of the Legislature to fill the remainder of the vacancy caused by the resignation of Holden, continued rightfully in the office as *locum tenens* during the session of the Legislature, and thereafter, for the same reason, until a successor should appear bearing a commission from some person or body vested with the power of election or appointment. After the adjournment of the Legislature, on the 31st of March, 1868, the last day of Holden's term, the defendant stood in the same relation to the office in which Holden would have stood had he not resigned. Holden would have continued rightfully in the office as *locum tenens*

after the expiration of his term, until a successor duly elected or appointed appeared to relieve him. So as to the defendant. So far as the case shows, no such successor had appeared before the commencement of this action, and the defendant was, therefore, rightfully in the office as *locum tenens* at the time this action was commenced, and may so, continue until the office is demanded by some person who can produce a commission from either the Board of Directors or the Legislature, for the statute leaves the Governor no power in the premises.

Judgment affirmed.

SAWYER, C. J., concurring:

" When any office shall, from any cause, become vacant, and no mode is provided by the Constitution and laws for filling such vacancy, the Governor shall have power to fill such vacancy by granting a commission, which shall expire at the end of the next session of the Legislature, or at the next election of the people." (Con., Art. V, Sec. 8.) Under this provision of the Constitution two events must coincide before the Governor is authorized to appoint to an office— there must be both a vacancy and no mode provided by the Constitution and laws for filling "*such* vacancy." (*People* v. *Mizner*, 7 Cal. 523; *People* v. *Stratton*, 28 Cal. 392.)

In this case, assuming that there was a vacancy, notwithstanding the fact that there was a *locum tenens* authorized to hold till some one else should be duly appointed, (see *People* v. *Whitman*, 10 Cal., 43, *contra*,) was there no mode provided by law to fill such vacancy? If there was a mode provided, then the Governor had no power to appoint. The Legislature under the statute was the duly appointed body to elect the members of the Board of Directors; but the statute provides that " in case of a vacancy in said Board occurring when the Legislature is not in session, *said Board* may fill said vacancy until the next assembling of the Legislature,

and then the Legislature shall proceed to fill said vacancy for the *unexpired term only.*"

If the vacancy, then, occurred when the Legislature was not in session, the Board of Directors was authorized by the statute to fill it. Holden's term extended two years "from the passage of this Act;" that is to say, from the 31st of March, 1866. There could be no vacancy in the term commencing from March 31st, 1868, before the advent of that day, for the term itself was not in existence before that day. Suppose the Legislature had elected a party to fill the unexpired portion of Holden's term, without electing a successor for the next term, there could then have been no vacancy to be filled until the 31st of March, 1868; but at the expiration of the term so filled, to wit: on the 31st of March, 1868, a vacancy would have occurred in the succeeding term, and as the Legislature was not in session on that day, the vacancy thus resulting in that term would have occurred when the Legislature was not in session, and, by the express terms of the Act, the Board of Directors would have been authorized to fill it, for the Act makes no distinction as to the mode in which the vacancy occurs. The language is, "*in case* of a vacancy occurring." This covers any vacancy occurring, no matter how it arises. We can no more say that it is limited to one class of cases than to another. The Board, then, is authorized to fill any "vacancy" occurring when the Legislature is not in session. So, also, had the Legislature adjourned the day before it did, leaving Holden's unexpired term unfilled, and the Governor (conceding his power to do so) had, on the 30th of March, 1868, made the appointment, it could then only have extended to the 31st of March—the balance of Holden's unexpired term—and another vacancy would have occurred on the 31st of March to be filled again. The Legislature itself could "fill *said vacancies* for the *unexpired term* ONLY." (Stats. 1865–6, p. 513, Sec. 1.) Certainly the Governor could do no more.

That the vacancy in *Holden's unexpired term* was not filled by any appointing power cannot affect the question of power

to fill the vacancy occurring in the subsequent term, when it arose. The Governor could not under any circumstances, before the 31st of March, 1868, have made an appointment for the term commencing on that day. The vacancy in Holden's unexpired term continued till the expiration of his term—no longer. After the expiration of Holden's term, to wit: on the 31st of March, 1868, a new term commenced, and a vacancy in that term, which could be filled by any power other than by a regular election by the Legislature for the entire term, for the *first time occurred*. The Legislature adjourned on the thirtieth, and it was *not in session* when that vacancy in the term commenced. It is therefore clearly, in my judgment, within the express provision of the statute, and the Board was authorized to fill the vacancy till the next meeting of the Legislature. This is the construction, upon the supposition that the word "occurring" is to be construed in the sense of commencing or having its inception when the Legislature is not in session. But it is by no means clear to my mind that it should be so limited. It would be no constrained construction to hold that it was intended to give the Board the power of appointment whenever there *is* a vacancy and the Legislature is not in session, whether the vacancy commenced in the vacation or during the session, and for any cause the Legislature failed to fill it before adjournment. It seems clear that the Legislature did not intend that a vacancy in this office should be filled by the Governor in any event, but that the appointment should be made by one of the bodies indicated. It provided for filling vacancies both during the session of the Legislature and when not in session, and this covers the whole period of time. The constitutional provision only steps in where no other appointing power is provided; and our predecessors have repeatedly held that the constitutional provision conferring power on the Governor in the cases specified should be strictly construed, when there is any doubt, so as to limit the power of the Governor. (*People* v. *Mizner*, 8 Cal. 524,

CAL. REPS. XXXVII—82

*525; People* v. *Langdon,* 8 Cal. 15; *People* v. *Whitman,* 10 Cal. 46.) I concur in the view taken by Justices SANDERSON and RHODES, that the Governor was not authorized to appoint in this case.

I also concur in the opinion that the defendant is not a usurper or intruder into the office, for the reasons stated by Mr. Justice SANDERSON, and that the judgment must be affirmed.

SPRAGUE, J., dissenting:

The sense in which the term "vacancy," as applied to an office, is used in all legislative enactments in which a different meaning or intention is not in direct terms declared, must be deemed such as is defined by the Legislature itself in the general Act concerning offices. (Section 30 of Act of 1851, Stats. 1851, pp. 419, 420; Section 23 of substituted Act, approved April 22d, 1863, Stats. 1863, p. 389.)

The term "vacancy," as defined by the Legislature in the sections above referred to, clearly applies to such terms of office as have been entered upon by an incumbent, who, for some cause during his term, has ceased to occupy the office; or to terms of office, the incumbent for which has been legally designated by election or appointment, and fails to qualify and enter upon its incumbency. Such is the legislative sense and meaning of the term. The constitutional meaning of the term "vacancy," is more comprehensive, as used in Article Five, section eight; it not only includes vacancies in terms of office which have been partially filled by an incumbent, and such terms of office as have had no incumbent *de jure,* by reason of the failure of a duly selected incumbent to qualify and enter upon the same, but includes all offices and terms of office, constitutional and statutory, having no *de jure* incumbent, either by reason of a statutory vacancy or by reason of the existence of an office or term of

office, for the incumbency of which no person has been legitimately designated.

An office, either constitutional or statutory, may exist as a legal entity, disconnected with and independent of an incumbent of the same *de jure* or *de facto*, and the time of such' existence is dependent alone upon the power creating the office, which creating power may, as it most generally does, divide its existence into periods or terms, with fixed dates as to commencement and termination, or into terms with fixed periods as to extent of duration, without reference to date or exact time of commencement or termination. So a *term* may exist as a legal entity and constituent or integral part of an office, disconnected with and independent of an incumbent of such term, and—as in some exceptional cases —it may exist for an indefinite period, or during the pleasure of the power or authority authorized by the organic Act to designate or appoint the ocffier.

The power creating an office may immediately select the officer for the whole or a limited period of its existence, and may, and most generally does, merely create the office, define its duties and prescribe the mode of selecting the officer for the successive terms or periods of its existence, and may, and usually does, provide a mode for supplying an officer in case the primary mode provided should partially or wholly fail to accomplish that result for the entire term.

A neglect or failure to *employ* the primary means for the selection of the officer prescribed by the organic law, is rarely, if ever, contemplated by the framers of the law creating the office; hence no provision is made for such a con-tingency. ' If our Legislature ever contemplated such a contingency, it has failed to recognize its possible existence by any statutory provision to meet it, but has left it to be met by the constitutional provision contained in section eight of Article Five.

A vacancy in an office, or term of office, contemplated by the statute, has reference to and is immediately connected with an incumbent who has entered upon the office, or a duly

selected incumbent of such office or term of office; and such statutory vacancy exists when an incumbent of an office or term of office, by failing to occupy his full term, leaves a portion thereof unsupplied by an officer, or when a duly selected incumbent for a full or fractional portion of a term, fails to qualify and enter upon the term for which he was selected, and thereby such term is unsupplied with an officer, and *vacant* in the statutory sense.

In the present case, the law creating the offices of Directors of the Insane Asylum selected and appointed seven persons, as officers and incumbents of said offices, to constitute a Board of Directors, and provided that, of the seven persons so selected, the first three named in the Act should go out of office at the expiration of two years from the passage of the Act, and the fourth, fifth, sixth, and seventh named should go out of office at the expiration of four years from the passage of the Act; that the successors of the persons so named should be elected by the Legislature in Joint Convention, and that the terms of office of such successors should be four years; and further provided, that "in case of a vacancy in said Board occurring when the Legislature is not in session, said Board may fill said vacancy until the assembling of the Legislature, and then the Legislature shall proceed to fill said vacancy for the unexpired term only." (Section first of the Act concerning Insane Asylum, as amended March 31st, 1866, Stats. 1865–6, p. 513.) By this statute the office of Director of the Insane Asylum is divided into terms commencing at a definite time or·date, and the duration of each term is fixed and definite. The commencement of the terms of all of the Directors named in the Act is on the 31st of March, 1866, and the term of the first three persons named in the Act as Directors, to wit: E. S. Holden, Austin Sperry, and A. J. Spencer, is limited to two years from that date, and the subsequent terms of the same officers is fixed at four years. No provision is made by the law for supplying an incumbent for a full term, except by the Legislature in Joint Convention, and no provision is made for any

vacancy which may occur by reason of the failure of the Legislature to select an incumbent for such term. The only vacancies provided for have reference to and are dependent upon a pre-existing incumbent of a portion of an unexpired term, or to a selected incumbent for a term who may fail to qualify and enter upon the same—such vacancies only as are included in the statutory definition of the term "vacancy," as illustrated and defined by the twenty-third section of the Act concerning officers, hereinbefore referred to.

The term of office upon which E. S. Holden entered extended from the 31st March, 1866, to the 31st March, 1868. Upon his resignation on the 8th February, 1867, a vacancy occurred for the residue of the term upon which he had entered, and such vacancy occurring when the Legislature was not in session, the Board of Directors, composed of its remaining numbers, were by the terms of the Act authorized to select an incumbent for such portion of Holden's term only as intervened between his resignation and the meeting of the Legislature on the first Monday of December, 1867, at which time it devolved upon the Legislature to supply an incumbent for the residue only of the two years' term upon which Holden originally entered. It appears from the record that the Board performed its duty and appointed respondent to the office vacated by Holden. The Legislature met on the first Monday of December, 1867, and continued in session till the 30th March, 1868, without having selected an incum bent for the unexpired portion of Holden's term, or an incumbent for the full term succeeding that upon which Holden originally entered. It seems clear that by reason of such non-election of the Legislature, a vacancy, as defined by statute, existed in the term upon which Holden originally entered, from the first Monday in December, 1867, to the 31st March, 1868; and after the 31st March, 1868, a vacancy existed in the term succeeding Holden's term, which no statutory law has provided for filling during the recess of the Legislature. This was a vacancy not contemplated by any statute, and clearly not falling within the legislative

definition of the term "vacancy," but within the more comprehensive terms of section eight of Article Five of the Constitution, which confers upon the Governor the authority and makes it his duty, "when any office shall, from any cause, become vacant, and no mode is provided by the Constitution and laws for filling such vacancy, to fill such vacancy by granting a commission, which shall expire at the end of the next session of the Legislature, or at the next election of the people." In the performance of this duty appellant was commissioned by the Governor to fill the vacancy occasioned in the Board of Directors, by the failure of the Legislature to provide an incumbent for the full term succeeding Holden's two years' term, and by virtue of this commission, and his qualification thereunder on the 10th day of July, 1868, appellant was clearly entitled to enter upon the duties of Director, and from thence hitherto and now is so entitled; and respondent, from said 10th day of July, 1868, has had no legal claim or right to act as one of the Directors, or as a member of the Board of Directors of the Insane Asylum. I am, therefore, of opinion that the order of the Court sustaining the demurrer to appellant's complaint, and judgment thereon against him, ought to be reversed and cause remanded.

CROCKETT, J., dissenting:

By the express terms of the Act the Board is only authorized to fill a vacancy which occurs during the recess of the Legislature, and "*until the next assembling of the Legislature.*" Holden having resigned during his term, the Board appointed the respondent to fill the vacancy. By the very letter of the Act this appointment ceased on "the next assembling of the Legislature," which was on the first Monday in December, 1867. From the moment that the Legislature assembled, the office was vacant, and the Legislature had the power to fill it for the unexpired portion of the term. This must be conceded on all sides. The fact that the respondent was

authorized to discharge the functions of the office until his successor was elected and qualified, does not prove that the office was not vacant. He continued only as a *locum tenens*, and to prevent an injury to the public interests. But the *office* was vacant nevertheless; otherwise the Legislature would have had no power to fill it. This is too plain to require discussion. As soon as the Legislature assembled, the office, *eo instanti*, became vacant, and so continued during the remainder of the session, the Legislature having failed to fill it. Indeed, it has ever since continued to be vacant, unless the appointment of the appellant by the Governor was a lawful and valid act. No one else has attempted to fill it. The Legislature failed to do it, and the Board has not attempted to do it. We have, then, the case of a vacancy which did not occur " when the Legislature is not in session;" but, on the contrary, which occurred when it *was* in session, or cotemporaneously with its assembling. It is quite certain it did not occur when the Legislature was *not* in session. It is equally certain the Board exhausted its power of appointment, in respect to the unexpired portion of Holden's term, when it appointed the respondent to fill the vacancy. The statute defines with precision the limit to this appointment in these words: " Said Board may fill said vacancy until the next assembling of the Legislature." The office, therefore, became vacant when the Legislature assembled, and neither the Legislature nor the Board attempted to fill it. It is quite evident the Board had no power to fill it during the session of the Legislature, on which body that duty is specially devolved by the statute. But it is said that a vacancy for a new and full term commenced on the day *after* the Legislature adjourned, and that this second vacancy occurred when the Legislature was not in session, and that by the express letter of the Act such vacancies are to be filled by the Board, and cannot be filled by the Governor. If an office be once vacant, and there is no subsequent attempt to fill it, I do not clearly understand how the vacancy can be subdivided into terms, so as thereby to create

several vacancies instead of one. It is a misapplication of terms to say that one vacancy ends and another begins in the same office, when it has been continuously vacant from the time when a vacancy first occurred. A vacancy in an office begins when there ceases to be an incumbent to fill it; and it continues so long as there is no incumbent. It may continue for a portion or the whole of a term, or for several terms; but so long as it continues without interruption, it is but one vacancy and not several, though it may extend over several terms. To say that a new or another vacancy has occurred in an office which before and at the time was vacant, appears to me to be an abuse of terms. It would seem to be a self evident proposition that a continuous vacancy, extending over several terms, is but one vacancy, and not several; and that it would be incorrect to designate the commencement of each successive term as the beginning of a new vacancy in the office. The *office* was vacant all the time, though there were several terms to have been filled, and the vacancy commenced when there first ceased to be an incumbent.

The vacancy in this office commenced on the first Monday of December, 1867, on the assembling of the Legislature, and did not therefore occur when the Legislature was not in session. The Board, therefore, had no power to fill it, and the Legislature failed to fill it, either for the unexpired term of Holden or for the new term. On the adjournment of the Legislature, the office being vacant, and there being no provision of law for filling it during the recess of the Legislature, the case is one of those included in section eight, Article Five, of the Constitution, which authorizes the Governor to appoint.

I am convinced that it was not intended by the statute to confer the power of appointment on the Board, under the facts which appear in this record. The Legislature reserved to itself the appointment of the Board of Directors; conferring on the Board the power to fill vacancies in its own body, "occurring when the Legislature is not in session"

and "until the next assembling of the Legislature." It is evident the Legislature intended to keep the Board of Directors within its own control as far as practicable, and hence it conferred on the Board a very limited power of appointment in filling vacancies. It was only permitted to fill those occurring during the recess of the Legislature, and then only until the next Legislature should assemble. It is not in the least degree probable that it was intended to delegate to the Board the power to fill a vacancy which existed when the Legislature was in session, and which was to extend over a new term to commence on the day after its adjournment, and which the Legislature itself, as we may reasonably infer, intentionally omitted to fill.

In my opinion the demurrer to the complaint ought to have been overruled.